# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liberty Township and Citizens'     :
Environmental Association of the    :
Slippery Rock Area,                 :
      Petitioners        :
                         :
      v.                 :   No. 107 C.D. 2024
                         :
Department of Environmental         :   Argued:  May 6, 2025
Protection and Tri-County Landfill, Inc. :
(Environmental Hearing Board),      :
      Respondents        :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge

## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH             FILED: August 7, 2025

        Liberty Township (Township) and Citizens' Environmental Association of the Slippery Rock Area (CEASRA) (together, Petitioners) petition for review of the January 8, 2024 order of the Pennsylvania Environmental Hearing Board (Board). The Board dismissed Petitioners' appeal from the Department of Environmental Protection's (Department) issuance of a major permit modification sought by Tri-County Landfill, Inc. (TCL) (with the Department, Respondents) to operate a municipal waste landfill (Landfill)[1] on 99 acres in Liberty and Pine Townships, Mercer County, Pennsylvania (Property).[2]

---

[1] We utilize the term "Landfill" throughout this opinion to refer to the proposed landfill facility for which TCL seeks a permit modification.

[2] Although there appears to have been a dispute below as to whether the Property also extends into Springfield Township, Mercer County, we do not address the question because it is not necessary **(Footnote continued on next page…)**

In this Court, Petitioners argue that the Board erred as a matter of law, made findings not supported by substantial evidence in the record, and violated article I, section 27 of the Pennsylvania Constitution, commonly known as the Environmental Rights Amendment (ERA).[3]   After careful review, we reverse.

## I.  FACTS AND PROCEDURAL HISTORY

The tortured history of these permitting proceedings span more than 35 years.[4]  We summarize as follows only the facts pertinent to the instant appeal, which we review in the light most favorable to Respondents as the prevailing parties below. They are taken from the Board's findings and largely are undisputed.

TCL owns the Property, where a landfill facility was permitted and operated beginning around 1950.  TCL is a subsidiary of Tri-County Industries, Inc. (TCI), which is a subsidiary of Vogel Holdings, Inc.  In 1985, the Department, pursuant to the provisions of the Solid Waste Management Act (SWMA),[5] issued to TCI a permit to operate a landfill on a site in Pine, Liberty, and Springfield Townships, Mercer County (Permit 101295).  Permit 101295 did not describe the precise boundaries of the permitted area or include an expiration date.  It nevertheless identified the permitted area as containing 49.2 acres and the entire site as containing 212.6 acres.

In April 1988, the Environmental Quality Board (EQB) promulgated new regulations governing solid waste disposal.  One of the new regulations required that

---

to our disposition.  We also note that the disputed permit identifies only Pine and Liberty Townships. (Reproduced Record (R.R.) 00557a.)

[3] Pa. Const. art. I, § 27.

[4] The Board aptly described the proceedings as "what must undoubtedly be the most protracted, convoluted permit application process in the history of the Commonwealth[.]"  (Board Adjudication (Adjudication), 1/08/2024, at 45.)

[5] Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101 – 6018.1003.

waste disposal facilities permitted prior to April 1988 submit either a closure plan or an application to modify their permits to bring the facilities into compliance with the new regulations. Facilities that did not file the required permit modification application would not be allowed to process or dispose of waste after April 1990.

TCI submitted a preliminary application for permit modification on June 21, 1988, which the Department denied as administratively incomplete. After TCI's appeal to the Board, the parties entered a consent order and adjudication that permitted TCI to submit a new permit application. TCI submitted the application, which the Department again denied.[6] On appeal to the Board, TCI and the Department executed a settlement agreement pursuant to which TCI would, by February 1991, submit a repermitting application to reopen and operate the Landfill. TCI submitted the repermitting application, after which it advised the Department that the name of the facility would change and TCL would be the new operating entity. Review and processing of this repermitting application continued for several years.

In 1997, the EQB again promulgated new regulations governing, among other things, municipal waste disposal. The new regulations included a new setback requirement prohibiting the location of a landfill within 10,000 feet of an airport runway used by turbine-powered aircraft (Setback Requirement). The Setback Requirement, now codified at 25 Pa. Code § 273.202(a)(15), exempts "areas that were permitted prior to January 25, 1997" (Setback Exemption or Exemption). *Id*.

On August 6, 1997, the Department denied TCL's repermitting application. The Department concluded that the proposed 218-acre permit area

---

[6] TCI simultaneously submitted a closure plan, which the Department approved in May 1990. The facility ceased receiving waste in or about September 1990. Since that time, TCL continuously has operated a waste *transfer* facility on the Property.

3

violated the Setback Requirement because it was within 10,000 feet of the Grove City Airport runway. The Department further concluded that less than all of the permit area was permitted prior to 1997, rendering the Setback Exemption inapplicable. TCL appealed to the Board, and, on March 30, 2000, the parties executed another settlement agreement (2000 Settlement Agreement). The 2000 Settlement Agreement included a stipulated term identifying 99 acres[7] of proposed landfill area that was permitted prior to January 25, 1997, and, accordingly, was covered by the Setback Exemption. Specifically, the 2000 Settlement Agreement provides:

> Based on the Department's review and analysis of the materials referred to in the preceding paragraph, the Department has concluded, and [TCL] agrees, that the phrase "areas that were permitted prior to January 25, 1997" encompasses, with respect to the Landfill, a number of specific areas, the size of which is approximately 99 acres, where the following occurred or were used by [TCL]: Department-permitted disposal activities; support facilities; borrow areas; offices; equipment sheds; monitoring wells; water pollution control systems; access roads; survey control monuments; Department-permitted closure and postclosure care and maintenance activities; and other areas in which the land surface had been disturbed before January 25, 1997[,] as a result of or incidental to operation of the Landfill.

(Adjudication, at 43; TCL Ex. 12 at 4, ¶ N.) The parties further stipulated that "[t]he approximate 99[-]acre area depicted on Exhibit A[8] is a municipal waste landfill authorized by the Department pursuant to (a) [Permit 101295] issued in 1985 and (b) the municipal waste regulations promulgated in April[] 1988 set forth in Chapters 271

---

[7] In August and November 1988, the Department issued permit modifications that approved lateral expansions of the original 49.2-acre disposal area. The 99-acre area included the areas where disposal activities had occurred under Permit 101295 and ancillary areas where operations incidental to waste removal were located.

[8] Exhibit A to the 2000 Settlement Agreement is a map depicting the 99-acre permitted area. (TCL Ex. 12, Ex. A.)

and 273 of 25 Pa. Code." TCL Ex. 12 at 5, ¶ 1. *See also Id.* at 9, ¶ 14 ("The statements in Paragraphs A through P are true and correct. In any judicial or administrative proceeding involving the Department and [TCI or TCL], no party to this Agreement may challenge the accuracy or validity of these statements.")

The Department subsequently withdrew its denial of TCL's repermitting application and agreed that TCL could submit a new repermitting application limited to the 99-acre area identified in the 2000 Settlement Agreement. TCL submitted the repermitting application in July 2000. The Department denied it in October 2001, concluding that the potential harms of "bird strikes" at the Grove City Airport outweighed the benefits of reopening the Landfill.[9] TCL appealed to the Board, during which it submitted a modified repermitting application to the Department that included a proposed bird control plan to address the bird strike problems.[10]

The Department denied the application, concluding that TCL's proposed bird control plan would not sufficiently mitigate the potential bird strike problems at the Grove City Airport. The Department also cited the history of compliance violations by two of TCL's related companies, Seneca Landfill, Inc. and Vogel Disposal Service, Inc. TCL again appealed to the Board, after which it submitted additional proposed mitigation measures to address bird strikes. The Department thereafter concluded that the amended bird control plan would sufficiently mitigate the potential harms caused by bird strikes and that, with the new mitigation measures, the Landfill's benefits would outweigh its harms. The Department nevertheless denied TCL's repermitting application in September 2013 because it concluded that TCL did not comply with the

---

[9] Pursuant to a newly-promulgated regulation at 25 Pa. Code § 271.127, the Department is required to balance the potential harms of a landfill with its benefits in making permitting decisions.

[10] Given the serial repermitting applications filed since 1988, the Department issued this application a new permit number, No. 101678.

40-foot height limitations in the Pine Township and Liberty Township zoning ordinances and, again, because of the compliance issues with TCL's related companies.

TCL appealed the denial to the Board, after which it again entered into a settlement agreement with the Department. Pursuant to this settlement agreement, TCL would submit a revised repermitting application with plans to comply with local height restrictions. On December 17, 2018, TCL filed the revised application, which is the subject of this appeal (2018 Application). In the 2018 Application, TCL proposed to operate the Landfill on the 99-acre area identified in the 2000 Settlement Agreement. The Department ultimately concluded that the Landfill's benefits outweighed its potential harms and that TCL's repermitting application met all regulatory, statutory, and constitutional requirements. Accordingly, on December 28, 2020, the Department issued Permit 101678 (the Permit), which authorizes operation of the Landfill on the Property for a 10-year term through December 28, 2030. The Permit allows TCL to accept up to 4,000 tons of new waste per day, 24 hours a day, six days a week.

Petitioners appealed to the Board, lodging over 40 objections to the Department's issuance of the Permit. After receiving and disposing of multiple pre-hearing filings, none of which is at issue in the instant appeal, the Board conducted a 12-day hearing in April 2023. Thereafter, the parties submitted multiple post-hearing motions. Pertinent here, Petitioners filed (1) a motion requesting that the Board conduct a site view, (2) a motion to re-open the record to add evidence of a bird strike at the Grove City Airport, and (3) a motion to re-open the record to introduce additional evidence of regulatory noncompliance from TCL's related companies. The Board denied all of the motions and received extensive post-hearing briefs from the parties. After *de novo* review, the Board filed its 112-page Adjudication and order dismissing Petitioners' appeal and denying their requests to re-open the record. The Board

concluded that Petitioners, as the challenging parties, had not carried their burden of proof to establish by a preponderance of the evidence that the Department's issuance of the Permit was unlawful, unreasonable, or not supported by the evidence of record.

Petitioners now petition for review in this Court.

## II.   ISSUES

Petitioners present the following questions for our review: (1) whether the Board's determination that the Landfill may be permitted within 10,000 feet of an airport is supported by substantial evidence in the record and complies with Pennsylvania law; (2) whether the Board's finding that TCL's compliance history was satisfactory is supported by substantial evidence in the record and complies with Pennsylvania law; (3) whether the Board's application of the harms/benefit test is supported by substantial evidence and complies with Pennsylvania law; (4) whether the Board erred in failing to conclude that TCL and the Department waived certain issues by not addressing them in their post-hearing briefs; and (5) whether the Board violated the ERA.

## III.   DISCUSSION

### A.   This Court's Review

We review the Board's Adjudication to determine whether the Board committed legal error, violated constitutional rights, or made necessary findings unsupported by substantial evidence in the record. *United Refining Company v. Department of Environmental Protection*, 163 A.3d 1125, 1130 n.2 (Pa. Cmwlth. 2017). Substantial evidence is evidence upon which a reasonable mind could base a conclusion. *Kiskadden v. Pennsylvania Department of Environmental Protection*, 149 A.3d 380, 387 (Pa. Cmwlth. 2016) (*en banc*). We review the Board's Adjudication and not the action of the Department that the Board reviewed. *United Refining*

7

*Company*, 163 A.3d at 1136. On issues of law, our standard of review is *de novo* and our scope of review is plenary. *Department of Environmental Protection v. Cumberland Coal Resources, LP*, 102 A.3d 962, 970 (Pa. 2014).

In determining whether substantial evidence of record supports a material finding of fact, we view the record in the light most favorable to the party that prevailed before the Board. *Kiskadden*, 149 A.3d at 387. "It is irrelevant whether the record contains evidence that would support contrary findings. Our inquiry is whether the findings are supported by substantial evidence." *Id.* We accordingly will not reweigh evidence, make our own credibility determinations, or substitute our discretion in place of that of the Board. *United Refining Company*, 163 A.3d at 1136; *Gibraltar Rock, Inc. v. Pennsylvania Department of Environmental Protection*, 316 A.3d 668, 678 (Pa. Cmwlth. 2024) ("This Court may not substitute judicial discretion for administrative discretion in matters such as these, which involve technical expertise[] and which are within the special knowledge and competence of the members of the Board."); *Brockway Borough Municipal Authority v. Department of Environmental Protection*, 131 A.3d 578, 586-87 (Pa. Cmwlth. 2016) (the Board "is the sole finder of fact and has discretion regarding witness credibility, weight of the evidence, and resolution of conflicts of evidence").

### B.     Petitioners' Burden of Proof Before the Board

Because they are pertinent to resolving Petitioners' issues in this Court, we first review the evidentiary principles that apply to proceedings before the Board. In appeals from Department actions, the Board must conduct a *de novo* hearing, and it may admit and consider evidence that was not introduced before the Department, including evidence developed after the filing of the appeal. *United Refining Company*, 163 A.3d at 1136. Where the issues before the Board cannot be understood without

specialized or scientific knowledge or experience, expert testimony is required. *Brockway Borough Municipal Authority*, 131 A.3d at 587.

The party challenging the Department's action has the burden of proving, by a preponderance of the evidence, that the Department either acted arbitrarily or abused its discretion. *United Refining Company*, 163 A.3d at 1134; *Pennsylvania Trout v. Department of Environmental Protection*, 863 A.2d 93, 105 (Pa. Cmwlth. 2004); 25 Pa. Code § 1021.122(c)(2). Pertinent here, the Board summarized as follows Petitioners' burden of proof:

> As third parties appealing the Department's issuance of the major permit modification to [TCL], [Petitioners] bear the burden of proof . . . . They must show that the Department's action was not lawful, reasonable, or supported by our *de novo* review of the facts.
>
> To carry their burden of proof, [Petitioners] must prove their case by a preponderance of the evidence, meaning [Petitioners] must show that the evidence in favor of their proposition is greater than that opposed to it. In other words, [Petitioners'] evidence challenging the Department's approval of [TCL's] permit modification must be greater than the evidence supporting the Department's determination that the permit modification was reasonable, appropriate, and in accordance with applicable law.
>
> A third-party appellant who wishes to succeed may not simply come forward with a laundry list of potential problems and then rest its case. . . . [A]n appellant may not simply raise an issue and then speculate that all types of calamities may occur. Instead, an appellant must prove by a preponderance of the evidence that the problems the appellant alleges are likely to occur. When a party raises technical issues, it must come forward with technical evidence to support its challenge, which many times will require competent and appropriate expert testimony.

(Adjudication, at 41-42.) This burden does not require a challenging party to prove every factual detail by a preponderance of the evidence or that harm more likely than not will occur because of the issuance of the permit. Rather, under this standard, an appellant must prove before the Board that the Department acted unreasonably or arbitrarily. *United Refining Company*, 163 A.3d at 1133-34.

### C. The Setback Requirement

We begin with Petitioners' argument concerning the Setback Requirement because we find it to be dispositive. Petitioners argue that the Board erred in determining that the Landfill is exempt from the Setback Requirement. More specifically, Petitioners argue that (1) the terms of the 2000 Settlement Agreement were not and could not be binding on the Board or the parties in this litigation regarding whether the Property previously was permitted; (2) the Department is judicially estopped from changing its position in this litigation from that taken previously, namely, that the Setback Exemption does not apply; and (3) the Setback Exemption does not apply because the permitting application granted by the Department was for a new permit, and the Exemption requires continuous permitting. (Petitioners' Br. at 18-25.)

Both the Department and TCL argue in response that the Board correctly determined that the Property was permitted in its entirety prior to January 25, 1997, and it therefore is exempted from the Setback Requirement. They contend that the Board did not consider the 2000 Settlement Agreement to be binding but, rather, relied on it along with many other facts of record to conclude that the Landfill site was previously permitted. They also argue that the prior permit did not expire and, even if it did, the Setback Exemption does not require continuous permitting, but rather only that the "area" was, at some point, permitted prior to January 25, 1997.

10

## 1. Interpretation Principles

Because this issue requires us to interpret an agency regulation, we begin with the following interpretive principles that apply in this context. With regard to our standard of review,

> [r]egulatory interpretation is a question of law, and therefore, the standard of review is *de novo*, *i.e.*, a reviewing court is not bound by or required to defer to a prior legal conclusion.
>
> Although the standard of review is *de novo*, an agency's interpretation is entitled to deference by the courts, and the level of such deference depends on how we categorize that interpretation. Where an agency's interpretation of its own regulations is at issue, as in this case, its interpretation should not be disregarded unless shown to be clearly erroneous.
>
> In determining whether an interpretation is "clearly erroneous," courts examine: (1) whether [the Department's] interpretation of the regulation is erroneous or inconsistent with the regulation, and (2) whether the regulation [as interpreted by the Department] is consistent with the statute under which it was promulgated. In resolving whether the agency's regulatory interpretation is consistent with the statute, we must consider the purpose of the statute. Further, if a regulation contains an undefined term, then courts may resort to a dictionary to define that term.

*Pennsylvania Department of Environmental Protection v. Clearfield County*, 283 A.3d 1275, 1283-84 (Pa. Cmwlth. 2022) (internal citations, quotations, footnotes, and editing omitted). Regarding how we may go about ascertaining the meaning of a particular regulation,

> statutory construction rules apply equally to the interpretation of administrative regulations. The object of statutory construction is to ascertain and effectuate the legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful a statute's plain language generally provides the best indication of legislative intent. In reading the plain

11

language of a statute, words and phrases shall be construed according to rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a). Moreover, every statute shall be construed, if possible, to give effect to all of its provisions so that no provision is mere surplusage. [ ]1 Pa.C.S. § 1921(a)[.] Although a court must listen attentively to what a statute says, we must also listen attentively to what it does not say. As a general rule courts do not have the power to ignore clear and unambiguous statutory language in pursuit of a statute's alleged or perceived purpose. An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested. Finally, regardless of whether a statute is deemed ambiguous or not, our rules of construction forbid a court from adopting an interpretation that will produce a result that is absurd, impossible of execution, or unreasonable. [ ] 1 Pa.C.S. § 1922(1)[.]

*Dietrich v. Department of Agriculture*, 329 A.3d 735 (Pa. Cmwlth. 2024) (most internal citations, quotations, and editing omitted).

## 2.    Analysis

### a.    The Meaning of "Permitted Prior to January 25, 1997"

We begin, of course, with the language of the Setback Requirement, which is codified at 25 Pa. Code § 273.202(a)(15):

§ 273.202.    Areas where municipal waste landfills are prohibited.

(a) Except as provided in subsections (b) and (c),[11] a municipal waste landfill may not be operated as follows:

---

[11] Subsection 273.202(b) excepts from certain landfill isolation distance requirements (not the Setback Requirement) areas that were permitted prior to April 9, 1988, and were included in a landfill permit that (1) was issued between April 9, 1988 and December 23, 2000, and (2) has not been rendered void by the failure to process or dispose of municipal waste within five years of the permit's issuance. 25 Pa. Code §§ 273.202(b), 271.211(e). Subsection 273.202(c) excepts from all landfill **(Footnote continued on next page…)**

. . . .

. . . .

(15) Airport. **Except for areas that were permitted prior to January 25, 1997,** a municipal waste landfill may not be operated as follows:

(i) Within 10,000 feet--or 3,048 meters--of an airport runway that is or will be used by turbine-powered aircraft during the life of disposal operations under the permit.

. . . .

25 Pa. Code § 273.202(a)(15)(i) (emphasis provided). The Setback Requirement therefore is part of a regulation that governs areas, or locations, where municipal waste landfills may not be located. The Setback Requirement was added to the Department's regulations together with several other new provisions and took effect on January 25, 1997. The parties do not dispute the primary objective or purpose of this regulation: to prohibit, for safety reasons, the location of landfills within 10,000 feet of airport runways, where the risk of bird strikes is heightened. The parties further do not dispute that at least portions of the 99-acre Permit "area" is located within 10,000 feet of the Grove City Airport and facially violates the Setback Requirement unless exempted. The question before us, then, is two-fold: (1) what does it mean for an "area" to be "permitted" prior to January 25, 1997; and (2) given that meaning, is the Landfill exempt from the Setback Requirement.

First, and most plainly, the Setback Requirement distinguishes between municipal waste landfills and permitted areas, which do not refer to the same thing. "Municipal waste landfill" is defined in the Department's regulations as "[a] *facility* using land for disposing of municipal waste" and includes "land affected during the

---

isolation distance requirements postclosure activities conducted in areas permitted prior to December 23, 2000. 25 Pa. Code § 273.202(c).

13

lifetime of *operations* . . . ." 25 Pa. Code § 271.1. Although "area" is not defined in the Department's regulations, "permit area" is defined as the "area of land and water within the boundaries of the permit, which is designated on the permit application maps as approved by the Department. The area includes the areas which are or will be affected by the municipal waste processing or disposal facility." *Id.* In turn, "permit" is defined as "[a] permit issued by the Department to operate a municipal waste disposal or processing facility, or to beneficially use municipal waste. The term includes a general permit, permit-by-rule, permit modification, permit reissuance and permit renewal." *Id.* Thus, as pertinent here, the Setback Requirement's plain language provides that landfill facilities and their necessary accoutrements may not be located in any areas that lie within 10,000 feet of a qualifying airport *unless* those areas, "prior to January 25, 1997," were subject to a permit, as defined above, issued by the Department for the disposal of municipal waste. Such areas are exempt from the Setback Requirement.

The parties' disagreement centers on the phrase "permitted prior to January 25, 1997."[12] Respondents argue, and the Board concluded, that this phrase does not require continuous, uninterrupted permitting prior to and including January 25, 1997, but, rather, requires only that the subject area be permitted at some point prior to that date. They therefore contend that whether Permit 101295 expired prior to January 25, 1997, is immaterial and, even if it did expire, the ongoing and continuous repermitting proceedings of the previously permitted area suffices to exempt the Landfill from the Setback Requirement.

---

[12] Although Petitioners also appear to have disputed whether the entire proposed 99-acre area was in fact permitted *at any point* prior to January 25, 1997, given our disposition herein, we need not resolve that question.

14

Petitioners counter that, for an area to be exempted from the Setback Requirement, it must have been permitted continuously prior to and including January 25, 1997. Petitioners insist that because (1) Permit 101205 expired by operation of law in April 1993, (2) actual landfill operations pursuant to that permit (*i.e.*, the reception of solid municipal waste) ceased in 1990, and (3) TCL did not obtain a new, modified, reissued, or renewed permit prior to January 25, 1997, the area or portions of the area where the Landfill is to be located is not exempt from the Setback Requirement. We must agree with Petitioners.

First, although the parties offer different interpretations of the phrase "permitted prior to January 25, 1997," we do not find both interpretations to be "reasonable" and, accordingly, the phrase is not ambiguous. Respondents' interpretation necessarily would mean that the Setback Requirement does not apply to any area permitted *at any point* prior to January 25, 1997, regardless of whether a municipal waste landfill is or was ever operational in that area, has been dormant or deserted for years, or has been closed for any number of reasons for any number of years. We do not find this interpretation to be reasonable chiefly because, in contravention of basic interpretive principles, it would lead to an absurd and irrational result, which we must conclude was not intended by the General Assembly. Instead, we think the clear and plain language of this regulation requires that, for any municipal waste landfill seeking to be exempt from the Setback Requirement, such a facility has to establish that it was permitted, *i.e.*, that permitting proceedings had *concluded* and a permit had been granted, prior to January 25, 1997.

We also think it plain that the Setback Requirement's exemption language was intended to "grandfather" landfill areas that were permitted prior to January 25, 1997, and continued to be permitted as of that date. Our reason for this conclusion is

15

simple—those are the only landfill areas that need an exemption from the Setback Requirement. In other words, the exemption language was intended to apply to permitted and operational municipal waste landfill facilities in existence when the new regulations were enacted so that those facilities could continue in operation. It clearly was not intended to apply to areas that, at some point in the past, housed municipal waste landfill facilities that, as of January 25, 1997, were defunct, closed, had years-since-expired permits, or were conducting closure activities. Interpreting the Setback Exemption in this latter fashion, as Respondents insist we do, renders the Exemption language hypothetical, meaningless surplusage, which we must conclude was not intended. The Department's interpretation below therefore was clearly erroneous, and we do not defer to it.

b.      Whether the Landfill Area Violates the Setback Requirement

Given this interpretation, it is clear that the Landfill violates and is not exempt from the Setback Requirement. First, pursuant to 25 Pa. Code § 271.211(f), the term of Permit 101295 expired by operation of law on April 9, 1993, while repermitting or permit modification proceedings were ongoing with the Department. That regulation provides, in pertinent part, that "[a] municipal waste management facility without a permit term that was permitted by the Department prior to April 9, 1988, shall have a permit term that expires April 9, 1993. The operator of the facility may apply for permit renewal under § 271.223." *Id.* In turn, the expiration of a permit term precludes the continued disposal, processing, or beneficial use of municipal waste, but does not vitiate an operator's ongoing responsibilities to complete mandated closure procedures and otherwise comply with the SWMA, other environmental laws and regulations, and any other terms and conditions of a permit. 25 Pa. Code §

16

271.211(c). Because Permit 101295 did not have an express term, it was deemed to have a term that expired as a matter of law on April 9, 1993.

Second, none of the operations that TCL continued to perform on the Property either prevented or delayed the Permit's expiration. Although some provisions of Permit 101295 remained in effect to allow landfill closure activities, which had begun in 1990, to continue, all other landfill operations and any receipt, disposal, processing, or beneficial use of municipal waste thereafter ceased and, indeed, was precluded unless and until a permit "renewal" was *obtained*, not merely *sought*. *Id.*; 25 Pa. Code §§ 271.211(f), 273.223. Further, although certain waste *transfer* operations also continued on the Property, such operations do not require or accomplish Permit 101295's continuation past April 9, 1993. After that date, an actual permit renewal and/or modification was required for TCL to commence receipt of municipal waste, which renewal or modification was not obtained until almost 28 years later when the Department issued the Permit.

Third, neither TCL's engagement in repermitting or permit renewal proceedings as of January 25, 1997, nor the terms of the 2000 Settlement Agreement, require a different conclusion. Quite simply, the Setback Exemption does not provide that landfill areas with owners "engaged in permitting or repermitting proceedings prior to January 25, 1997" need not comply with the Setback Requirement. As we've discussed, actual permitting for the operation of a municipal waste landfill, and not repermitting *litigation*, is required.[13] Further, the terms of the 2000 Settlement Agreement, in which the Department and TCL agreed that the Landfill area is exempt

---

[13] Of course, municipal waste landfills might well have been engaged in repermitting proceedings as of January 25, 1997. However, to be exempt from the Setback Requirement, such landfills simultaneously would need to have an active, valid permit pursuant to which they were operating as of that date.

17

from the Setback Requirement, does not bind the Board, this Court, or any third parties that might challenge the Department's final issuance of the Permit. The 2000 Settlement Agreement is a private agreement between TCL and the Department that, even according to its own terms, is only binding on those parties and does not control or inform the correct interpretation of the Setback Requirement, which is a legal question for this Court's determination.

In sum, we conclude that the Board erred as a matter of law in denying Petitioners' appeal of the Department's issuance of the Permit because the Board, with the Department, erroneously concluded that the proposed Landfill area was permitted prior to January 25, 1997.[14] The Board also erred in concluding that the Landfill area is exempt from the Setback Requirement. Because it is undisputed that portions of the Landfill area are within 10,000 feet of the Grove City Airport, the Permit should not have been issued. On that ground, we reverse the Board's January 8, 2024 order.[15]

PATRICIA A. McCULLOUGH, Judge

---

[14] We acknowledge that the Pennsylvania Supreme Court, in *dicta*, has suggested that the ongoing litigation of repermitting proceedings could exempt the Landfill area from the Setback Requirement. *See Eagle Environmental II, L.P. v. Pennsylvania Department of Environmental Protection*, 884 A.2d 867, 875 n.9 (Pa. 2005) ("Had [TCL] submitted its application as a new application rather than a repermitting application, the location of the landfill would have been barred by regulations prohibiting landfills within 10,000 feet of an airport runway."). Nevertheless, the issue of whether the Setback Requirement precluded the issuance of the Permit was not before the Supreme Court in *Eagle Environmental II*, and, after considering a fully developed record and the comprehensive briefing of the parties on the question, we do not believe that our determination herein is inconsistent with any binding directives of our Supreme Court.

[15] Because we reverse the Board on this ground, we need not address Petitioners' remaining issues.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liberty Township and Citizens'
Environmental Association of the
Slippery Rock Area,
               Petitioners

         v.

Department of Environmental
Protection and Tri-County Landfill, Inc.
(Environmental Hearing Board),
               Respondents

:
:
:
:
:
:
:   No. 107 C.D. 2024
:
:
:
:
:
:

## ***ORDER***

AND NOW, this 7th day of August, 2025, the January 8, 2024 order of the Pennsylvania Environmental Hearing Board (Board) is REVERSED. We remand this matter to the Board for further remand to the Pennsylvania Department of Environmental Protection with instructions to vacate Permit 101678.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge